## ALBERT GREEN *v.* STATE OF MARYLAND.
### [No. 11, April Term, 1931.]

*Decided June 9th, 1931.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Fuller Barnard, Jr.,* and *Saul Praeger,* with whom were *William R. Offutt* and *Joseph H. A. Rogan* on the brief, for the appellant.

*William L. Henderson, Assistant Attorney General,* with whom were *Wm. Preston Lane, Attorney General,* and *William A. Huster, State's Attorney for Allegany County,* on the brief, for the State.

PARKE, J., delivered the opinion of the Court.

Albert Green was tried on an indictment of three counts. By the first count he was charged with rape upon Margaret Beeman, a young unmarried woman; the second count was for an attempt to ravish her; and the third count was for a common assault and battery. The jury found him guilty under the third count, and he was sentenced to the penitentiary for six years. The questions on this appeal arise on the rulings on the evidence, and sixteen exceptions were reserved, but the seventh exception does not present any question for review, and the thirteenth and fourteenth have formally been abandoned, and the evidence admitted under the eighth exception was admissible, as it was competent to show the bruised condition of the body of the prosecutrix on the day after the crime.

1. The testimony of the prosecutrix and of the other witnesses for the State tended to establish rapes at night by the traverser and his cousin Oscar Green, and the return of the victim to her home as quickly as she could escape from her assailants. The prosecutrix reached her home about mid-

night, and her mother, with whom she lived, testified that she heard her daughter crying as she came up the path. When she entered the home the mother asked her what was the matter, and the admission of her daughter's subsequent statements, over the objection of the traverser, constitute the first five exceptions. The evidence of the mother is that, when her daughter said that they had taken her out in the woods, the mother fainted and required the attention of a doctor. In the morning, the daughter showed the mother her bruises, and said that Albert, Fred, and Oscar Green had driven her to the woods, where Albert Green, the traverser, and his cousin, Oscar Green, had connection with her.

When the mother lost consciousness, a neighbor, Mrs. Thomas James, was sent for and came about midnight, when, according to her testimony, the daughter made a complaint to her and exhibited the bruises. Over the traverser's objection the court directed the witness to state what she complained about, and the sixth exception is to the court's permitting this question to be asked. There was no reason why this inquiry should not be made, and her reply was that the daughter had said "she had been out with those three boys and they had assaulted her." After this reply was given, no further action was taken by the accused in reference to this testimony.

By the rulings of the court on the ninth, tenth, eleventh, and twelfth exceptions, it appears that a man, who was a first cousin of the woman assaulted, and his wife, went the next morning after the assault to see the prosecutrix, and were allowed to testify in reference to the complaint then made. The man stated that the prosecutrix had "complained about these boys taking her in the car and mistreating her," by which, he explained, he understood "they took advantage of her." His wife's testimony was that the prosecutrix "just told me that these fellows had taken her up the mountain and showed me the bruise marks on her hip."

So far as the court is advised, there are three decisions in our reports dealing with this subject of the admissibility

of the complaint of the victim of an alleged rape or its attempt.

In *Parker v. State* (1887), 67 Md. 329, 10 A. 219, the alleged rape occurred on Saturday and the girl ravished made no complaint until the Friday' following, when the mother discovered the hidden blood-stained garment of her daughter, who then told her mother of the crime. The victim had testified to the commission of the offense, and the mother was subsequently called and asked what reason her daughter had given for hiding her underclothing. The traverser objected, but the witness was allowed to repeat the girl's answer, which was a detailed narrative of the crime, and of her uncle's demand to conceal the clothing and his threat to kill her if she made any revelation. The court decided that this evidence was not admissible, on the ground that it was "simply hearsay, a narration of a past event, and not the language of any emotion caused by the supposed occurrence." Page 331 of 67 Md., 10 A. 219, 220. In making this ruling, the opinion declared that: "It would have been competent to prove on the examination in chief that the party alleged to have been injured made complaint while the injury was recent; but the details and circumstances of the transaction cannot be proved on such examination by her declarations. * * * When an outrage has been committed on a woman, the instincts of her nature prompt her to make her wrongs known, and to seek sympathy and assistance. The complaint which she then makes is the natural expression of her feelings. It may therefore be shown in evidence as a circumstance which would usually and probably have occurred in case the offense had been committed." It will be observed that, except in excluding the details and circumstances of the crime, this general expression does not prescribe any other condition with reference to the content of the complaint. The court, however, did mention an apparently rigid limitation upon the admissibility of the complaint, that it be made "while the injury was recent." This requirement, however, was not absolute in point of time, but relative to the circumstances of the particular case, as is

clear on authority, and demonstrated by the case of *Legore v. Maryland* (1898), 87 Md. 735, 737, 41 A. 60, 61, where the court, in speaking to this point, said: "If, however, the complaint be not made immediately after the occurrence, it is competent to explain the delay by showing that it was prevented by circumstances consistent with the instincts of her nature, prompting her to make it known." Accordingly, it was determined that, under the circumstances, a complaint, made on the husband's return in the evening, of an attempt to rape made in the morning of that day, was receivable in evidence.

Although the question argued and specifically considered on the appeal in the case last cited was the remoteness in time of the complaint, recourse to the record in *Legore v. Maryland, supra,* which was an appeal from a conviction under an indictment for an assault with intent to ravish, will show that the point raised on the second bill of exception was the right to ask the prosecutrix, "Did you tell your husband when he came home that night about Legore's conduct?" and to let in her reply, "I told my husband of Legore's conduct when he came home that night," and that the third bill of exception was to the ruling by which the State proved by the husband that the wife complained to him of the assault of Legore on her.

While the point was not discussed, the evidence given under these two bills of exceptions illustrates the accuracy of the observation, made for the court in the opinion by Chief Judge Bond in the appeal of *Blake v. State,* 157 Md. 75, 79, 145 A. 185, 187, that: "It has not been the practice in this state to restrict the testimony of a complaint to a mere yes or no answer. Some statement of the nature of the complaint has been regarded as admissible at least for the purpose of showing the character of the act complained of, and we think this a proper application of the rule."

In *Legore v. State, supra,* the particulars and details of the assault were not narrated, but the time, the place, the nature of the act, and the name of the alleged offender were evidently given in evidence as a matter of course, since the

only objection to the admissibility of the testimony discussed in the opinion was that the complaint was not promptly made. A complaint by the victim of a rape is an accusation of the perpetration of the crime, and in order for the complaint to be relevant it must be made of the particular offense of which the party charged is indicted. In order, therefore, for the complaint to be admissible, it must necessarily concur with the indictment in the unities of time, place, act, and actor. Accordingly, if a witness be asked if a complaint were made, and answer simply that it had been, the jury would infer a correspondence of the accusation made by the complaint with the essential averments of the indictment; so the advantage of having the witness state the time, place, crime, and name of the wrongdoer is the difference between a mediate and immediate evidence of a fact. The practice in this jurisdiction would seem to be so marked by common sense that there is no reason why it should be disturbed.

The crime of rape is accomplished by force, and is so frightful and shocking to the physical and nervous system of the victim that it is generally manifested by disordered and torn clothing, bruises and wounds, outcry, and as prompt a disclosure to family, relatives, or intimate friends as the circumstances admit. Should any of these corroborative *indicia* of the crime be not established, it would commonly be a just basis for the contention that the woman consented. So, if it should appear in any case that the prosecutrix had not made complaint, the failure would weigh heavily against the State and in favor of the accused, unless satisfactorily explained. There seems no question that the defense may prove an absence of complaint at the time of the crime and, so, it is but just to allow the prosecutrix to be corroborated by the proof of her complaint recently made. 2 *Wigmore on Evidence* (2nd Ed.), sec. 1135. As secrecy and isolation are usually the conditions under which the crime is committed, and the testimony of the man and the woman are in conflict on the vital issue of whether or not force has been employed, some corroboration of the woman is important in the proof of the crime, but, aside from what may be admis-

sible as part of the *res gestae,* there are but few instances in which there is any corroborative evidence but that furnished by the complaint of the prosecutrix and the state of her body and clothes. So, of necessity the complaint of the victim, if recently made after the alleged outrage, is admissible. If the complaint is admissible, it would seem sensible and logical to require the terms and circumstances of the declaration likewise to be offered in evidence, in order that the testimonial weight to be given the complaint may be the better judged, since limiting the testimony to a categorical answer to the question of the fact of complaint leaves to the witness the decision of what constitutes a complaint, and if the conclusion is in the affirmative, the triers are left to an acceptance of the fact of a complaint but to speculate as to the content of the complaint, unless the traverser assume the risk of opening by cross-examination an inquiry on the details.

It is a universal rule that the prosecutrix may testify that she has made a complaint of the wrong, and when and to whom, and the persons to whom she has complained may be called to prove that fact. Whether or not the details and circumstances which she stated would be inadmissible in evidence, except when elicited in cross-examination or by way of confirming her testimony after it had been impeached, has variously been regarded. *Greenleaf on Evidence* (16th Ed.), vol. 3, sec. 213, vol. 1, secs. 162h, 469c; 1 *Phillips on Evidence* (4th Am. Ed.), 184; 1 *Taylor on Evidence* (6th Ed.), 532; *Starkie on Evidence* (6th Am. Ed.), 699; *Wharton's Crim. Ev.* (10th Ed.), sec. 273; 1 *Wharton on Crim. Law* (8th Ed.), sec. 566; *Wigmore on Evidence* (2nd Ed.), secs. 284 (2), 1134, 1760, 1761; *Thayer's Cases on Evidence* (2nd Ed.), 643-645; *Reg. v. Walker,* 2 Moody & R. 212.

The rule as narrowly formulated in *Parker v. State,* 67 Md. 331, 10 A. 219, became broadened in practice in this jurisdiction, as is exemplified by the record and decision in *Legore v. State,* 87 Md. 736-738, 41 A. 60, and as is stated in the recent case of *Blake v. State,* 157 Md. 75, 145 A. 185, where the court held admissible a complaint of the prosecutrix that was made shortly after the rape and before the vic-

tim had identified the unknown ravisher. In this complaint, the time, place and the description of the outrage were given, but the trial court would not permit any portion of the complaint that concerned the identity of the man to be offered in evidence. On the authority of the last two of these three appeals, the rulings of the trial court in reference to the testimony admitted must be affirmed. In *Blake v. State,* 157 Md. 79, 145 A. 185, it is pointed out that the rule admitting the complaint but forbidding its particulars has often been described as unreasonable. In England it has been decided that this rule was based on a misconception of the earlier cases, and it is no longer applied. *Reg. v. Lillyman* (1898), 2 Q. B. 167; *Rex v. Osborne* (1905) 1 K. B. 551.

There is great conflict and confusion of cases and authority, but the better rule, and the one more in conformity with our practice and decisions, is that, if the prosecutrix has testified to a violent assault, the fact of the making of complaint within a reasonable time under the circumstances is original evidence, and may be shown to prevent the inference that the woman did in fact maintain a silence inconsistent with her narrative at the trial; and if her testimony of the commission of the alleged crime be impeached by witnesses or by a cross-examination based on the defence that she consented or that her evidence is false, the terms and details of the complaint are admissible, preferably in rebuttal (a), as corroborative evidence, if made recently (b) after the commission of the alleged crime. *Supra,* and *Wigmore on Evidence* (2nd Ed.), secs. 1134-1140. See *Commonwealth v. Cleary,* 172 Mass. 175, 51 N. E. 746; (a) *Carey v. State,* 155 Md. 474, 483, 142 A. 497; (b) *Cooke v. Curtis,* 6 Har. & J. 93; *Bloomer v. State,* 48 Md. 521, 537; *Lanasa v. State,* 109 Md. 602, 619-621, 71 A. 1058; *Cross v. State,* 118 Md. 660, 669-672, 86 A. 223.

The rule as thus stated recognizes the several grounds of the relevancy of the complaint, and admits, under conditions which make for enforcement of the law without working any injustice to its alleged violator, the fact of complaint as substantive evidence, and its details as a corroboratory decla-

ration having a specially intimate connection with the principal admissible fact.

2. The testimony on the part of the State tended to establish three rapes committed upon the prosecutrix successively by the prisoner and his cousin, Oscar Green, at the same secret place where they had taken the woman. The cousin had been tried and convicted of rape. The defense was that the woman was not honest and had consented, and that the evidence that the alleged outrages had been accomplished by force was false. The traverser was the first witness and testified in detail in support of this version. He then called his companion, Oscar Green, who swore in precise confirmation of the prisoner's narrative, and explicitly stated that not only the prisoner's but his own use of the woman's body was without force and by reason of her full and voluntary consent.

At the closing of his cross-examination, which resulted in a repetition of his testimony in chief, the witness was asked if he had been convicted in the court where the trial was being conducted, and, over objection, the question was allowed, and his reply was an answer in the affirmative. Then the question, without objection, was put, "Convicted of what?" And he evaded by saying, "Convicted on the 27th," whereupon the court inquired: "Have you been convicted of rape as a result of this same transaction?" And, after an exception, the witness stated he had. These two rulings give rise to the last two bills of exceptions. The testimony under the first of these exceptions was later introduced without objection. Without reference to that circumstance, the point intended to be raised will be considered.

The traverser and his cousin were separately indicted and tried. The prior conviction of the cousin of rape upon the same prosecutrix in both cases was known to the accused, who elected to call the convicted man as a witness for the defence. By this course, the accused exposed the witness to impeachment and contradiction, and assumed whatever consequences might thereby duly ensue. There can be no doubt that the credibility of a witness can be impeached by proof of a con-

viction of the crime of rape. The evidence may be by record or by the certificate authorized by the statute, or through the admission of the witness. Code, art. 35, sec. 6; *Annarina v. Boland,* 136 Md. 365, 381, 111 A. 84; *United Railways v. Phillips,* 129 Md. 328, 334, 99 A. 355; *Nelson v. Seiler,* 154 Md. 63, 67, 139 A. 564; *Smith v. State,* 64 Md. 25, 20 A. 1026; *Donnelly v. Donnelly,* 156 Md. 81, 86, 143 A. 648; *Wigmore on Evidence* (2nd Ed.), sec. 980. Nor is there any legal objection to the identification of the conviction of the witness for rape with the occurrence which he had immediately before sworn was a carnal intercourse by him with the prosecutrix, but without force and by her unconstrained will. The witness did not confine himself to his asserted knowledge of what had happened between the prisoner and the prosecutrix, but, for the purpose of impeaching and contradicting the prosecutrix and the other witnesses for the State, he gave in evidence, in addition, all the facts and circumstances relating to his own offense, which were only consistent with his complete innocence of the crime for which he had been convicted. In reason and on principle, the identity of the charge for which he had been convicted with the acts, which he had just described in terms of innocence, between himself and the prosecutrix, was admissible because it directly and materially affected the weight of his given evidence.

To establish that the prosecutrix was not chaste, the witness testified that she accepted his embrace between those of the prisoner. A judicial determination by a court of competent jurisdiction that this specific act of intercourse by the prisoner was a rape is relevant and material to the question of the credibility of this witness. The appeal of *Mattingly v. Montgomery,* 106 Md. 461, 68 A. 205, 208, was in an action in tort by the plaintiff against a master to recover damages for an injury alleged to have been caused the plaintiff by the negligence of a servant while driving the master's horse and wagon in the course of the latter's business. The rate of speed at which the servant was driving was an important fact in determining whether or not the servant was negligent. The *nisi prius* court permitted the plaintiff to

prove by the servant "that he had been arrested and paid a fine for fast driving on this very occasion," and, on review, this tribunal said, at page 471 of 106 Md., 68 A. 205, 208: "There was decided conflict between the testimony of Harmison (the servant) and the plaintiff's witnesses as to the speed he was driving when he reached the tracks and when he attempted to cross. The credibility of the witness was, therefore, directly in issue upon a material point, and the fact proved tended to impair the weight of his evidence, and was properly admitted without the production of the record of conviction." *Balto. & O. R. Co. v. Strube,* 111 Md. 119, 125, 126, 73 A. 697; *Avery v. State,* 121 Md. 229, 237, 88 A. 148; *Lavine v. Abramson,* 142 Md. 222, 226, 120 A. 523; *Nelson v. Seiler,* 154 Md. 63, 67, 139 A. 564. See *Dotterer v. State,* 172 Ind. 357, 88 N. E. 689; *Shaw v. State,* 102 Ga. 660, 29 S. E. 477, 481. The tests for the admission of evidence of a conviction to impeach a witness in criminal issues do not differ, under the circumstances of this record, from those where the issues are civil.

The traverser, however, has urged upon the court a construction of *Newton v. State,* 147 Md. 71, 89, 127 A. 123, that is in conflict with these cases, but that decision explicitly affirmed the rule that a co-conspirator and co-indictee, who has been convicted after a severance, which resulted from a demand of a jury trial after those indicted with him had elected to be tried by the court, may have his credibility impeached, when testifying for the defense in the trial of his alleged co-conspirators, by proof of his prior conviction. What the court did condemn in positive terms was the cross-examination, which was objectionable in manner, and also in theory, as, instead of being directed to show a contradiction between what he had formerly and presently testified, it assumed that the witness' conviction was a conclusive and final contradiction of all his similar testimony in a pending trial. In other words, the proof of the conviction of the witness was admissible for the purpose of affecting the credibility of his testimony, when the triers considered and weighed it together with all the other facts and circumstances.

of the case; but the effect of the testimony of the witness so impeached was a question to be determined by the judgment of the then triers and not by the opinion of other triers on another trial. *Supra; 2 Freeman on Judgments* (5th Ed.), secs. 648, 653. Accordingly, there is no conflict between the ruling on this record and the decision in *Newton v. State, supra.*

There is another principle in support of the action of the trial court. The testimony offered by the prosecution was sufficient for the jury to find that the witness was not only guilty of rape but was an accomplice of the prisoner in his violation of the prosecutrix. While their alleged crimes were several, there was a close and criminal association between them, which apparently bound them together in a common defense and denial of the accusations of the prosecutrix. In order to weigh the testimony of the witness and to ascertain its evidential value, their relative position in consequence of their union must be known. As was said for the court by Chief Judge Alvey in *County Commissioners of Somerset County v. Minderlein,* 67 Md. 566, 571, 11 A. 57, 58: "It is certainly of primary importance, in determining matters of fact dependent upon human testimony, that the general status of those who testify should be fully understood by the jury. The true relation and disposition of the witness to the parties to the cause, and the subject-matter of litigation should be made to appear, to enable the jury to form a proper estimate of the value of his testimony; and the evidence of such relation and disposition of the witness is in no sense irrelevant to the subject-matter of inquiry. This is a well-settled principle of evidence, and is of daily application." *Blessing v. Hape,* 8 Md. 31, 33; *Daugherty v. Robinson,* 143 Md. 259, 266, 122 A. 124.

It was not until the question, whether the recent conviction of the witness was for his rape of the prosecutrix, was answered in the affirmative by the witness, that his real relation to the defense and his actual interest in the prosecution became known. With this disclosure of these important facts, the witness was revealed to be subject to the influence

of a combination of complex motives and a natural bias, whose knowledge was indispensable to the jury in justly determining the credibility of the testimony of the witness.

On these several grounds there was no reversible error in these last exceptions. It results from the views expressed on the questions raised on this appeal that the judgment must be affirmed.

*Judgment affirmed, with costs.*