## WILLIAM HARRIS, JR. *v.* STATE OF MARYLAND

[No. 369, September Term, 1970.]

*Decided April 27, 1971.*

The cause was argued before ANDERSON, ORTH, and POWERS, JJ.

*Lee N. Sachs* for appellant.

*James F. Truitt, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Howard L. Cardin, State's Attorney for Baltimore City,* and *Charles O. Fisher, Jr., Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

Appellant, William Harris, Jr., was tried in the Criminal Court of Baltimore by a jury, Judge Dorf presiding, for murder arising out of an armed robbery and for armed robbery. He was found guilty of murder in the first degree, without capital punishment, and attempted armed robbery. A sentence of life imprisonment was imposed upon the murder conviction and a sentence of twenty years was imposed upon the attempted armed robbery conviction, to run consecutively.

Three contentions are raised by appellant on appeal. They are:

1) That the trial court erred in admitting into evidence the confession of an accomplice.

2) That the trial court erred in refusing to instruct the jury to return verdicts of acquittal if it found the defendant's confession to be involuntary.

3) That the trial court erred in refusing to grant defendant's motion for a mistrial because of the prosecutor's remarks in his closing argument.

## I

Appellant argues that the trial court erred in admitting into evidence the statement of William Shelton, alleged accomplice of appellant. Shelton was called as a rebuttal witness for the State. Shelton testified that he was in the vicinity of Proctor and Preston Streets, in Baltimore, when he saw five or six boys grab a man named Martin and pull him into an alley. Martin was assaulted and robbed and Shelton admitted participating [1] before fleeing from the scene. Shelton implicated appellant by testifying that Harris was at the scene of the robbery, and that Harris, just prior to the robbery, had shown him a .25 caliber automatic and put it up to his face. Shelton indicated that he heard a shot after he had run about a block and a half from the scene. The witness then stated that he encountered Harris about twenty-five minutes later still in the vicinity of the crime at the corner of Greenmount and Preston. According to Shelton, appellant asked him for money. Shelton replied that he had none and asked Harris "why he shoot the man." Shelton testified that appellant answered by saying that he had to shoot the man because "the man had seen his face and he didn't want the man to pick no photograph out on him."

On recross examination, Shelton admitted to several prior convictions and acknowledged that an agreement had been made with the State for him to plead guilty to

---

1. "I went across the street with them. I seen a couple of boys holding the man down, so I ran over to the man and felt his wrist . . . I felt his wrist to see if he had a watch."

a lesser charge with reference to his involvement in the same crime in return for his testimony against the defendant. On redirect examination, following the above recross examination, the State introduced, over defense counsel's objection, a signed statement made by Shelton to police officers after his arrest which substantiated his direct testimony at trial.

Harris contends that prior consistent statements of a witness are admissible only when the witness has been impeached on the basis of having made prior inconsistent statements. Appellant cites *Stocksdale v. Cullison*, 35 Md. 322, in support of his contention and concludes that since Shelton had not been impeached in this manner it was error to admit the statement.

We do not agree with appellant's reasoning. The general rule in this State governing the admission of consistent statements does not depend on the manner of impeachment as appellant alleges. According to the Court of Appeals, in *Gill v. Staylor*, 93 Md. 453, 468, the rule was originally laid down in *Cooke v. Curtis*, 6 H. & J. 93, "that where the credibility of a witness is attacked by the opposite party his prior declarations may be given in evidence to show his consistency." See also *Washington Fire Ins. Co. v. Davison*, 30 Md. 92. In *Stocksdale v. Cullison, supra*, at p. 326, the Court said:

> "The general rule is, that evidence that the witness has on other occasions made statements similar to what he testified in the cause is not admissible; unless where a design to misrepresent is charged upon the witness in consequence of his relation to the party or to the cause; in which case it seems it may be proper to show that he made a similar statement before that relation existed."

See also *Cross v. State*, 118 Md. 660, 670; *American Stores v. Herman*, 166 Md. 312, 316.

Defense counsel's recross examination of Shelton, as revealed by the record, includes references to the wit-

ness's prior convictions and questions exploring the nature of an alleged agreement between the State and Shelton for the latter to testify in exchange for the State accepting a guilty plea to lesser charges. It also includes a general factual probing by defense counsel of Shelton's previously given testimony in an attempt to expose possible confusion or uncertainty on the part of the witness. Shelton's statement was offered and admitted for the sole purpose of establishing the witness's credibility. The foundation for its admission was established—the spectre of a "design to misrepresent" as a consequence of Shelton's "relation to the party or to the cause" was clearly raised in defense counsel's recross examination in regards to plea-bargaining.

## II

In his second contention, appellant argues that the court erred in refusing to instruct the jury to return verdicts of acquittal if the jury found the defendant's confession to be involuntary. The confession in question was a signed statement by Harris introduced at trial through police officer, Sergeant Buzzuro. The statement was given in the presence of several officers after Harris's arrest. In the statement appellant confessed to participating in the robbery of the victim and admitted firing one shot at the victim when one of the perpetrators said he was being hurt.

Harris had been arrested after voluntarily entering a police station while looking for his wife. Appellant's wife testified that she had been taken to the station by police officers who were looking for her husband and was there for sometime as directed. In a hearing on a motion to suppress the confession,[2] Harris admitted seeing the robbery but denied any participation on his part, claiming that he signed the confession because he was told that his wife would then be released. At trial appellant's wife claimed that she sat in the police station for approximately two to three hours. Lieutenant Callahan

---

2. The motion was denied by Judge Dorf.

testified that he brought Mrs. Harris to the station for about ten minutes in the hope that they could locate the whereabouts of the appellant. He testified that he told Mrs. Harris, after speaking with her for approximately ten minutes, that she was free to go. Appellant reiterated at trial his testimony at the hearing on his motion—that he saw the robbery but only signed the statement, which he claimed was false, in order that his wife would be freed.

To support his contention appellant relies on the principle that it is mandatory for a court, when requested, to give advisory instructions on every essential point of law supported by the evidence. See *Tipton v. State*, 1 Md. App. 556; *Malloy v. State*, 4 Md. App. 420. However, the trial court need not grant any requested instructions if the matter is fairly covered by the instructions actually given. *Graef v. State*, 1 Md. App. 161; Maryland Rule 756 (b).

According to appellant the requested instruction was needed because there would be no evidence before the jury corroborating the testimony of Shelton, an admitted accomplice, if the jury found Harris's confession to be involuntary and therefore inadmissible. In the absence of corroboration, the testimony of the accomplice, Shelton, would not be sufficient to support appellant's conviction. Harris argues that the court's instructions failed to clarify this point.

In refusing to give the requested instructions, the trial court stated:

> "Well, I think all the instructions taken together are enough to accomplish that. You can argue in your closing arguments. I have already said that the uncorroborated testimony of an accomplice is not enough. * * * You can argue to the jury that if, in fact, therefore, they disregard the statement, that there is no other evidence other than the uncorroborated statements of the accomplice; therefore, this would not be

enough to convict. I think I have given all the law and all the facts, and, therefore, you can argue the law and the facts as I have given them."

We find that the given instructions were thorough and complete—encompassing the point of law embodied in appellant's requested instruction. The trial court gave instructions dealing with the necessity of corroborating an accomplice's testimony [3] and other instructions which indicated to the jury that it was up to them to determine the voluntariness of the confession based on the evidence presented.[4] Since the law in the case was adequately covered in the given instructions, the court did not err in refusing to grant appellant's additional instruction. *Nelson v. State*, 5 Md. App. 109, 120.

### III

Appellant's final contention is that the trial court erred in refusing to grant his motion for a mistrial because of the prosecutor's closing argument.

Since there was no request by appellant to have the closing arguments of counsel transcribed, as provided in Rule 32 of the Rules of the Supreme Bench of Baltimore City, and since the closing arguments were not transcribed, and are not a part of the record before us, we decline to consider it. Maryland Rule 1085.

*Judgments affirmed.*

---

**3.** "And I advise you that the individual, William C. Shelton, is an accomplice under the Maryland law. And under the Maryland law, the testimony of an accomplice alone is not sufficient evidence upon which to base a conviction."

**4.** "To be voluntary, a statement cannot be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. And unless you find that the statement of the accused was voluntary, in accordance with the guidelines I have just given you, you must disregard the statement."