## JOSEPH LEE CANTRELL *v.* STATE OF MARYLAND

[No. 431, September Term, 1981.]

*Decided December 8, 1981.*

The cause was argued before MOYLAN, LISS and COUCH, JJ.

*Don F. Lindner,* with whom was *Joseph H. Rouse, Assigned Public Defender,* on the brief, for appellant.

*Ann E. Singleton, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Warren B. Duckett, Jr., State's Attorney for Arundel County,* and *David Plymyer, Assistant State's Attorney for Anne Arundel County,* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

Appellant, Joseph Lee Cantrell, was tried by a jury in the Circuit Court for Anne Arundel County. The jury returned verdicts of guilty of first degree rape, second degree rape, first degree sexual offense, second degree sexual offense, perverted practice, assault and battery, and assault. Appellant was sentenced to a term of ten years for first degree rape, ten years for second degree sexual offense and five years for perverted sexual practice, all terms to run concurrently with the other offenses merging. It is from these judgments that this appeal is filed. Appellant raises two issues for determination by this appeal:

I. Did the trial judge err in not admitting certain evidence concerning the victim's character, which included why her mother was holding such a tight rein on her, the source of the money that she had the night of the alleged incident, a T-shirt that the victim was wearing that said "I love Joe", and a conversation that the victim had with a witness just prior to talking to the appellant wherein she said she had sold a piece of her body?

II. Did the trial judge err in allowing the State to present hearsay testimony from the victim's mother about remarks her daughter made to her when she returned home after the alleged incident, especially when a proper foundation had not been laid for the admissibility of these remarks and even

assuming a foundation had been laid, it was inadequate under the Maryland law?

## I.

It should be noted that while appellant states there are two issues to be decided by this appeal, the first of the issues raised in appellant's brief concerns four alleged errors by the trial court in its rulings on the admissibility of evidence. A detailed recital of the violent events which occurred in this case would serve no useful purpose.

Alicia, the victim, testified that in the late evening hours of July 28, 1980, she was met outside her home by the appellant and his friend named Wilkins; that she entered Wilkins' car and accompanied him and the appellant to an area in Anne Arundel County known as the Clay banks; that a handcuff was placed on her wrist; that she was then compelled to engage in vaginal, oral, and anal sex with both Wilkins and the appellant. The defense by the appellant was that Alicia consented to the sexual encounters which occurred.

In an effort to support the appellant's position as to consent, he was permitted on the cross-examination of Alicia to elicit the information that there had been a lengthy relationship between the appellant and the alleged victim, which included considerable sexual activity. She was also cross-examined as to the sources of large amounts of money which she had on her from time to time and stated that some of the money was earned from her employment at Fort Meade Motors and the remainder was given to her by her parents. There then ensued a number of efforts in cross-examination to establish that Alicia was a person of loose morals who was being kept under a tight rein by her mother. The appellant complains that the trial court erred in four instances in its rulings on objections to the admissibility of this evidence.

Initially, appellant contends that the trial court committed reversible error when it refused to admit evidence concerning the victim's character; *i.e.,* chastity.

Maryland Code (1957, 1976 Repl. Vol., 1981 Cum. Supp.), Art. 27, § 461A, known as the Rape Shield Law, provides as follows:

> (a) *Evidence relating to victim's chastity. — Evidence relating to a victim's reputation for chastity and opinion evidence relating to a victim's chastity are not admissible in any prosecution for commission of a rape or sexual offense in the first or second degree.* Evidence of specific instances of the victim's prior sexual conduct may be admitted only if the judge finds the evidence is relevant and is material to a fact in issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value, and if the evidence is:
>
> (1) Evidence of the victim's past sexual conduct with the defendant; or
>
> (2) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or trauma; or
>
> (3) Evidence which supports a claim that the victim has an ulterior motive in accusing the defendant of the crime; or
>
> (4) Evidence offered for the purpose of impeachment when the prosecutor puts the victim's prior sexual conduct in issue.
>
> (b) *In camera hearing. —* Any evidence described in subsection (a) of this section, may not be referred to in any statements to a jury nor introduced at trial without the court holding a prior in camera hearing to determine the admissibility of the evidence. If new information is discovered during the course of the trial that may make the evidence described in subsection (a) admissible, the court may order an in camera hearing to determine the admissibility of the proposed evidence under subsection (a). [Emphasis supplied.]

*See Lucado v. State,* 40 Md. App. 25, 389 A.2d 398 (1978).

It is clear that under this section evidence relating to a victim's reputation for chastity is no longer admissible in any prosecution for the commission of a rape or sexual offense in the first or second degree.[1] Where the defense seeks to offer into evidence specific instances of the victim's prior sexual conduct we conclude that there is a responsibility on the defense to raise the issue, either by way of a written pretrial motion[2] or by way of a proffer at the time of trial. Appellant suggests that the trial judge sua sponte is required to hold an in camera hearing in order to determine whether such evidence is admissible. We perceive no such obligation imposed on the trial judge by the provisions of Section 461A.

Appellant, in the presentation of his defense, made no motion or proffer as to the admissibility of the evidence of the prior sexual conduct of the victim. In direct contravention of Art. 27, § 461A (b), defense counsel, in his opening statement to the jury, told them that "Alicia was into - - - kinky type sex with Joe Cantrell and others."

It seems clear to us that the defense was predicated upon attempting to establish consensual activity between the parties, and in order to substantiate this, defense counsel sought by indirection to raise the issue of the victim's chastity and prior sexual conduct. In an effort to shatter the victim's credibility, appellant, in a blatant disregard of Section 461A, sought to establish by the testimony of a relative that Alicia had told him that she "sold a piece of her body on the day of the crime for $50." If this testimony was directed toward establishing that Alicia was a prostitute, it had little, if any, probative value on the issue of the victim's consent. Appellant ingeniously urges that even if the testimony is not admissible as affecting the victim's credibility,

1. Prior to the passage of this Act, the law in Maryland was that evidence of a rape victim's reputation for chastity was admissible in evidence, but that evidence of specific acts of sexual conduct with persons other than the defendant were not admissible. Giles v. State, 229 Md. 370, 183 A.2d 359 (1962), *appeal dismissed,* 372 U.S. 767, 83 S.Ct. 1102, 10 L.Ed.2d 137 (1963).

2. This motion is not included among the mandatory pretrial motions enumerated in Maryland Rule 736.

it should have been admitted as an explanation of the fact that the victim, upon examination, was found to have semen in her vagina, mouth and anus. We do not agree. While the appellant admitted only having vaginal intercourse with the victim, the victim testified that both he and Wilkins had engaged in sexual intercourse with her vaginally and anally, as well as orally. Under these circumstances, the vague statement that she had sold her body that day for $50 had no probative value whatsoever, and after having carefully reviewed the record in this case, we find no error in the rulings of the trial court as to the admissibility of the evidence.

## II.

Appellant finally urges that the trial court erred when it admitted into evidence testimony by the victim's mother concerning her daughter's complaint to her that she had been raped. The statement was made several hours after the commission of the crime. The testimony revealed that upon the completion of the sexual encounter between the appellant, the victim and Wilkins, it was discovered Wilkins' car would not start. Appellant and Wilkins sought a "hot shot" from a man who was in the vicinity. The man originally agreed to help but when he tried to reach Wilkins' car the man decided to turn back because of the rough road. Wilkins and the appellant stole a battery from another car, installed it into their own car, and drove Alicia back to her mother's house. Wilkins told Alicia he needed money for gas and she told him she had some in the house under the couch. The appellant came into her house with her, where Alicia pretended to look under the couch for the money. Alicia claimed that she was stalling and making noise in an attempt to wake up her mother. Alicia then went into the bathroom and shut the door. She heard her mother wake up and order the appellant to leave the house. After the appellant left, Alicia came out of the bathroom. Her mother asked her what had happened and Alicia told her mother that she had been raped. Alicia's mother, over defense counsel's

objection, was then permitted to testify concerning what her daughter had told her. She testified that when Alicia came out of the bathroom she was crying and her hands were shaking; that her eyes were red and glassy; that there was a bruise under her left eye and other bruises on her face which had not been there when she had left the house, and that there was a handcuff hanging from her wrist. She was also permitted to testify that Alicia had told her that appellant and another young man had been waiting for her outside her house, that they had grabbed her, put handcuffs on her wrist and had taken her down to the Severn River where they had abused her sexually in the mouth, vagina and rectum. Appellant argues that the trial court erred in admitting Alicia's mother's testimony regarding her daughter's complaint of rape as it was not part of the res gestae because of the time which elapsed between the alleged acts and the conversation of Alicia with her mother. Appellant further suggests that the trial judge erred in admitting this testimony because the record indicates that the daughter's statement was not "volunteered" but was made in response to her mother's inquiry as to what happened. We do not agree with either of these contentions of the appellant.

Appellant relies primarily upon *Smith v. State,* 6 Md. App. 581, 252 A.2d 277 (1968) in support of his position. Under the circumstances surrounding this case, *Smith* is a slender reed upon which to rely. In *Smith,* this Court rejected a contention similar to that made by appellant in that case, holding that a complaint by a rape victim is admissible as original evidence to support the testimony of the victim as to time, place, crime and names of the wrongdoers. *Smith v. State, supra,* at 586. *See also Shoemaker v. State,* 228 Md. 462, 180 A.2d 682 (1962); *Green v. State,* 161 Md. 75, 155 A. 164 (1931). We said further in *Smith, supra,* at 586-7, "that in a proper case the victim's complaint can also be a part of the *res gestae* and, of course, therefore admissible whether or not the victim testifies." It is to be noted that in this case the victim did testify to substantially the same

information included in the statement made in answer to her mother's query as to what had happened.

Contrary to appellant's contention "[t]he time element alone is not the controlling factor." *Smith, supra,* at 587. We held such statements were admissible in situations where the victim "took advantage of the first opportunity to speak alone with the person to whom such a complaint would have been most likely made." *Id.* at 586.

The Court of Appeals, in *Green v. State, supra,* held that evidence of the victim's complaint made while the alleged injury was recent was admissible in evidence:

> [T]he better rule, and the one more in conformity with our practice and decisions, is that, if the prosecutrix has testified to a violent assault, the fact of the making of complaint within a reasonable time under the circumstances is original evidence, and may be shown to prevent the inference that the woman did in fact maintain a silence inconsistent with her narrative at the trial; and if her testimony of the commission of the alleged crime be impeached by witnesses or by a cross-examination based on the defense that she consented or that her evidence is false, the terms and details of the complaint are admissible, preferably in rebuttal (a), as corroborative evidence, if made recently (b) after the commission of the alleged crime. [161 Md. at 82].

We find no error by the trial court in permitting the mother to testify regarding her daughter's complaint of rape to her. What weight, if any, was to be given to this testimony was a question of credibility to be determined by the trier of fact. After a careful review of the record, we find no merit in appellant's suggestion that no proper foundation was laid for the mother's testimony. Under the circumstances, we find no abuse of discretion by the trial court in permitting Alicia's mother to testify.

*Judgments affirmed; costs to be paid by appellant.*