PIERCE v. STATE

[No. 85, September Term, 1961.]

*Decided December 14, 1961.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

*Stephen R. Pagenhardt* and *William Walsh* for the appellant.

*Joseph S. Kaufman, Deputy Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *W. Dwight Stover, State's Attorney for Garrett County,* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

Claiming that he was erroneously convicted of manslaughter by automobile, by a judge in the Circuit Court for Garrett

County, sitting without a jury, on the uncorroborated oral and written statements he had made before he was charged with the offense, the defendant, Gene Russell Pierce, seeks a reversal of the conviction.

The accident out of which the prosecution arose occurred at about two o'clock in the early morning of September 18, 1960, at the "T" intersection of Route 495 with Route 135 in Garrett County, when the *operator* of the automobile, in which only the defendant and the deceased, one Alvin Luther Roderick, were riding, failed to heed the stop sign at the intersection before making a right angle turn from Route 495 on to Route 135. As a result of not stopping, the automobile continued across the intersection, through a steel guard rail, down a ravine and struck a tree approximately eighty feet from the side of the highway. When it finally came to rest, the automobile was headed in the direction from which it had come and was lying on its left side with the top against the tree. The deceased was killed on impact, and the defendant hospitalized.

Both occupants of the automobile, which belonged to the appellant's mother, had been drinking. The autopsy on the deceased disclosed that his blood contained .06% ethyl alcohol. The defendant admitted that, during a period of two and one-half hours prior to the accident, he had consumed six to eight bottles of beer. After the accident, the state trooper found a half-pint of gin in the vehicle. At the trial, another motorist on Route 495 estimated that the automobile involved in the accident had passed him at a distance of "a couple of thousand feet" from the intersection going between 90 and 100 m.p.h., and also observed—because he had seen no brake lights—that the speeding automobile did not slow down as it approached the intersection. Another motorist, who arrived at the scene after the accident had happened, assisted the defendant in extricating himself from the wrecked automobile through a hole. And a nearby resident, who had also gone to the scene of the accident before the automobile had been righted, observed a leg of the deceased "sticking out of the door there." After the wrecked automobile had been put "on its wheels," a photograph taken by a state trooper (Corporal Robert D. Henline)

substantiated the fact that the left leg of the deceased was protruding through the open window in the door on the right or passenger side of the automobile.

About two hours after the accident, the defendant orally admitted to his physician (Dr. James H. Feaster) that he was driving the automobile at the time of the accident. And, in the afternoon of the same day, Corporal Henline and another state trooper took a written statement from the defendant at the hospital after first consulting the attending physician. In this signed statement the defendant again admitted that he was operating the automobile at the time of the accident. Both statements were admitted into evidence without objection. However, the written statement was not admitted until after the State had shown that the defendant had been advised of his constitutional rights and that the statement had been given willingly, freely and voluntarily and without any threats or promises of reward.

The exact question posed by the defendant is: "Can a conviction of manslaughter by automobile be sustained on the uncorroborated extra judicial confession and oral admission of the defendant?" Stated in slightly different terms, he concludes his brief by saying: "Because the State failed to prove a crime was committed independent of the written and oral statements of the defendant, the appellant respectfully asks that the verdict and judgment of the trial court thereon be reversed."

It may be conceded that in this State an extra-judicial confession of guilt by a person accused of crime, uncorroborated by other evidence, is not sufficient to warrant his conviction. *Weller v. State,* 150 Md. 278; *Markley v. State,* 173 Md. 309; *Jones v. State,* 188 Md. 263. And it may also be conceded in the case at bar that it was incumbent upon the State to prove the *corpus delicti,* but the appellant claims "there was no independent evidence establishing the *corpus delicti,* either direct or circumstantial." The nub of his argument boils down simply to this: that the State could not, and did not, prove, independently of his admissions, whether he or the deceased was driving the motor vehicle at the time of the accident; hence

the State failed to prove the *corpus delicti,* and his conviction was erroneous. With this contention, we are unable to agree.

In *Jones v. State, supra,* this Court stated that evidence to establish the *corpus delicti* may be either direct or circumstantial; that in a homicide case the proof of the *corpus delicti* is sufficient if it establishes the fact that the person for whose death the prosecution was instituted is dead, and that the death occurred under circumstances which indicate that it was caused criminally by someone. Further, that the independent testimony necessary to establish the *corpus delicti* need not establish the fact beyond a reasonable doubt; but it is sufficient if, when considered in connection with a confession (we think the statements involved herein were clearly "admissions" as distinguished from "confessions." See *Vincent v. State,* 220 Md. 232.), it satisfies the trier of facts beyond a reasonable doubt that the offense was committed and the defendant committed it. See also *Bollinger v. State,* 208 Md. 298; *Williams v. State,* 214 Md. 143; *Cooper v. State,* 220 Md. 183; *Davis v. State,* 202 Md. 463, to cite but a few of the Maryland cases to this effect. And the character, nature and amount of independent proof of the *corpus delicti* need not, of itself, be full and positive, but is to be determined largely by the circumstances of each particular case. *Cooper v. State, supra* (pp. 190, 191); *Davis v. State, supra* (p. 470).

We think the independent proof in this case to the effect that the deceased was killed as a result of the accident, that the automobile was traveling between 90 and 100 miles per hour, that the operator failed to stop at a stop sign, that he proceeded off the road through a steel railing for, at least, 80 feet, that the physical damage to the car was severe, and that appellant's mother owned the automobile was sufficient, under the circumstances of this case, to support a finding by the trier of facts that the *corpus delicti* had been established; and when considered with his admission that he was driving the motor vehicle and had consumed six to eight bottles of beer, it was ample to support the further finding by the trial court of all the constituent elements of the offense with which

the appellant was charged. *Duren v. State,* 203 Md. 584; *Lilly v. State,* 212 Md. 436; *Clay v. State,* 211 Md. 577.

> *Judgment affirmed. The appellant to pay the costs.*

HORNEY, J., filed the following concurring opinion.

The effect of the majority opinion is to hold that in *all* manslaughter by automobile cases there has been sufficient proof of the *corpus delicti* when it has been shown that the death of the victim was the result of the operation of the automobile by *someone* in a grossly negligent manner. To me, the showing of these two elements (conceded by the defendant) was not enough to establish the "body of the crime" in *this* case. For, under the unusual circumstances of this tragic automobile accident, it is certain that had the deceased been operating the lethal instrument at the time of the accident, a crime could not have been committed. Contrary to the majority, it is my opinion that in this case a third fact or element had to be shown in order to fully establish the *corpus delicti.*

Since the term *corpus delicti* means the substantial and fundamental facts that are necessary to show that a crime has been committed, it seems apparent to me that in order to establish the body of the crime with certainty, it should not only be shown that the *defendant was operating the automobile* at the time of the accident as the extrajudicial statements of the defendant indubitably admit, but that that admitted fact must also be corroborated by *some* evidence from a source other than the admissions of the defendant.

It being conceded that there was ample evidence to support a finding that the automobile involved in the accident was then being operated in a grossly negligent manner, the real question is whether the evidence produced was sufficient in law for the trial court to find beyond a reasonable doubt that the defendant was operating the automobile when the accident happened.

We are in agreement that there was sufficient evidence to justify the conviction of the defendant, but we do not agree as to how that result should have been reached. We further

agree that extrajudicial statements made by an accused, whether they be confessions or admissions (as they were in this case), must be corroborated unless they come into the evidence (as they did here) without objection. And, though we disagree as to what are the component elements of the *corpus delicti,* we also agree in principle that the rules governing the corroboration of extrajudicial statements in this State —as they are set forth in such cases as *Wood v. State,* 192 Md. 643, 65 A. 2d 316 (1949) ; *Davis v. State,* 202 Md. 463, 97 A. 2d 303 (1953) ; *Hall v. State,* 213 Md. 369, 131 A. 2d 710 (1957) ; and *Cooper v. State,* 220 Md. 183, 152 A. 2d 120 (1959)—recognize, among other things, that the corroborating circumstance need not establish the *corpus delicti* beyond a reasonable doubt; that the *corpus delicti* may be proved by circumstantial evidence when direct evidence is not available; that proof of the *corpus delicti* need not be full and positive but may be established by the circumstances of each particular case; and that the corroborating evidence is sufficient to establish the *corpus delicti* if, when considered in connection with the confession or admission, it satisfies the trier of fact beyond a reasonable doubt that the offense charged was committed and that the accused committed it.

The rule in this and most other jurisdictions goes even further in that the evidence in corroboration of an extrajudicial statement need not connect the defendant with the crime charged: his connection therewith may be shown by his statement without corroboration on that point. *Weller v. State,* 150 Md. 278, 132 Atl. 624 (1926). But in a case such as this, where one of the elements of the *corpus delicti* is intangible— in that it cannot be definitely established that a crime has been committed other than by the admissions of the defendant—it is my belief that this general rule is inapplicable here, and that the accused should not be convicted unless there is some evidence aliunde the statements (as there was in this case) to fortify the truth of the admissions that the defendant was the operator of the automobile. See the Annotation, "Corroboration of Extrajudicial Confession or Admission," 45 A.L.R. 2d 1316, 1322, [§ 4]. See also *Smith v. United States,* 348 U. S. 147 (1954) ; *Tabor v. United States,* 152 F. 2d 254 (1945) ;

and compare the majority and dissenting opinions in *Smyly v. United States,* 287 F. 2d 760, 763 (1961).

In the instant case, where there was *some* evidence from another source—to the effect that the deceased was seated on the passenger side of the automobile when the accident occurred—tending to substantiate the fact that the defendant (as he had admitted) was operating the automobile, it was not improper for the trial court to consider the admissions in connection with that evidence (even though it was circumstantial and unpositive), and the inference deducible therefrom, in deciding that the *corpus delicti* had been established to its satisfaction beyond a reasonable doubt. Cf. *Davis v. State, supra,* (202 Md. at p. 471). And, when that had been done, there was clearly no doubt as to the guilt of the defendant.